**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

**JAMES W. MCLANE AND MONICA MCLANE**
**AS CO-SPECIAL ADMINISTRATORS OF THE**
**ESTATE OF BARBARA JEAN MCLANE, DECEASED**
**AND ON BEHALF OF THE WRONGFUL DEATH**
**BENEFICIARIES OF BARBARA JEAN MCLANE;**
**THOMAS D. WALDRON, AS SUCCESSOR**
**SPECIAL ADMINISTRATOR OF THE ESTATE OF**
**AIDEN JAMES WINSLOW MCLANE, DECEASED**
**AND ON BEHALF OF THE WRONGFUL DEATH**
**BENEFICIARIES OF AIDEN JAMES WINSLOW MCLANE;**
**AND CYNTHIA PARSONS-GASS, AS GUARDIAN AD LITEM**
**FOR AUBRIE LYNN MCLANE AND**
**ALYSSA LEANN PARSONS, MINORS**                    **PLAINTIFFS**

**v.**                           **No. 2:11-cv-00101 KGB**

**RICH TRANSPORT, INC. d/b/a RICH LOGISTICS;**
**SALEM LEASING CORPORATION; SALEM GLOBAL**
**LOGISTICS, INC. d/b/a SALEM NATIONLEASE;**
**AAA COOPER TRANSPORTATION, INC.; JERRY SMITH;**
**AND FLORENTINO CAMPOS**                           **DEFENDANTS**

**OPINION AND ORDER**

This action arises from a series of collisions between a Jeep Grand Cherokee driven by

Barbara Jean McLane, and two tractor trailers, one driven by defendant Florentino Campos and

the other operated by defendant Jerry Smith.  The Court has jurisdiction pursuant to 28 U.S.C. §

1332.  Barbara McLane and her son, Aiden James Winslow McLane, died as a result of the

injuries they sustained in the accident.  Barbara McLane's daughters, Aubrie Lynn McLane and

Alyssa Leann Parsons, were passengers in the Jeep.  The plaintiffs allege that Mr. Campos and

Mr. Smith were negligent, that their negligence is imputed to their respective employers, Rich

Transport, Inc. ("Rich Transport") and AAA Cooper Transportation, Inc. ("AAA Cooper"), and

that Rich Transport and the Salem defendants are liable for various independent acts of

negligence.  In addition to the foregoing claims, Aubrie McLane and Alyssa Parsons seek to recover damages for the intentional and negligent infliction of emotional distress.

Before the Court are the motions for partial summary judgment and to bifurcate filed by AAA Cooper and Mr. Campos (Dkt. Nos. 51, 76) and the motion for partial summary judgment filed by Rich Transport, Mr. Smith, and the Salem defendants (Dkt. No. 56).  For the reasons that follow, the defendants' motions for partial summary judgment are granted in part and denied in part.  The parties have submitted a proposal relating to the issue of bifurcation and the presentation of evidence of punitive damages at trial which the Court takes under advisement.

## I.     Factual Background

The McLane Jeep was traveling west on Interstate 40 when the collision occurred.  The second amended complaint alleges that Mr. Smith's tractor trailer struck the rear of a U-Haul trailer being pulled by the McLane's Jeep as he attempted to pass.  The Jeep spun out of control and was struck by the tractor trailer driven by Mr. Campos.  Mr. Campos testified that he did not see the McLane vehicle until he was a few car lengths away.  According to Kelley Adamson, one of plaintiffs' expert witnesses, Mr. Campos's tractor trailer struck the McLane's Jeep hard enough to disable it completely and with enough force to bend the U-Haul and gouge the pavement.  Aubrie McLane broke her arm in the collision, and Alyssa Parsons received several cuts and bruises.

The plaintiffs have presented evidence that it was snowing the morning of the accident and that visibility was low.  There is evidence that Mr. Campos was talking on his cell phone minutes before the collision.  A witness to the accident who was traveling approximately 50 miles per hour testified that Mr. Campos passed him just prior to the collision.

Mr. Smith admitted to sending approximately 24 text messages over a two-hour period before the collision.  There is evidence that he had driven more than 70 hours in the eight-day period leading up to the accident, in violation of 49 C.F.R. 392.3, and that he had submitted false logs to Rich Transport to hide the violation.  Mr. Smith testified that he knew texting and driving was a violation of Arkansas law, and he demonstrated a working knowledge of the 70 hour rule by successfully completing quizzes administered by Rich Transport.

Rich Transport documented 237 fatigued driving violations between December 2010 and February 2011.  The plaintiffs have presented evidence that Mr. Smith's logs reflected hours of service violations.  Diane Caine, one of plaintiffs' experts, testified that an audit of the logs would have revealed additional hours of service violations.  According to Ms. Caine, Rich Transport was paying Mr. Smith for hours that he was not recording.  The plaintiffs allege that Mr. Smith was fired by his previous employer for falsifying logs.

AAA Cooper and Rich Transport have admitted that their respective employees were acting within the scope of their employment at the time of the accident.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the non-moving party to establish by "specific facts" that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  An issue of fact is material only if it could

3

affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### III.   Claims Against the Salem Defendants

The Salem defendants argue that they are neither vicariously nor independently liable in negligence because Mr. Smith is not their employee.   They also contend that the Graves Amendment, 49 U.S.C. § 30106, bars plaintiffs' negligent entrustment claim.   The plaintiffs concede that the Salem defendants are not proper parties to this action but request that any dismissal be without prejudice.   Because the Salem defendants are entitled to summary judgment, the claims against them are dismissed with prejudice.

### IV.   Claim Against Florentino Campos

AAA Cooper contends that Mr. Campos should be dismissed from this action because it has admitted *respondeat superior* liability.   AAA Cooper has cited no case law mandating dismissal, and the Court is not aware of any.   Therefore, AAA Cooper's motion on this point is denied.

### V.   Claims of Aubrie McLane and Alyssa Parsons

Aubrie McLane and Alyssa Parsons allege that they suffer from post-traumatic stress disorder as a result of the accident.   They assert claims for outrage and the negligent infliction of emotional distress.

#### A.   Outrage

The Arkansas Supreme Court has taken a "narrow view" of the tort of outrage.  *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007).   To prevail on an outrage claim, the plaintiff must establish by "clear-cut proof" that (1) the defendant intended to inflict emotional distress or should have known that emotional distress was the likely result of his conduct; (2) the

defendant's conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the defendant's conduct caused the plaintiff's distress; and (4) the emotional distress suffered was so severe that no reasonable person could be expected to endure it.  *Id.*  "'It is for the trial court to determine, in the first instance, whether the conduct may reasonably be regarded as so outrageous as to permit recovery.'"  *Givens v. Hixson*, 275 Ark. 370, 372, 631 S.W.2d 263, 264 (1982) (quoting Restatement (Second) of Torts § 46 cmt. h).

Viewing the evidence in the light most favorable to the plaintiffs, the Court concludes that no reasonable jury could find that Mr. Campos's or Mr. Smith's conduct was so extreme in degree as to go beyond all possible bounds of decency.  It is undisputed that snow was falling the morning of the accident, and plaintiffs have submitted evidence that visibility was low.  There is evidence that Mr. Campos was talking on his cell phone minutes before the accident occurred.  A witness to the accident who was traveling approximately 50 miles per hour testified that Mr. Campos passed him just prior to the collision.   There is evidence that Mr. Smith sent approximately 24 text messages over a two-hour period before the collision.  There is evidence that he had driven more than 70 hours in the eight-day period leading up to the accident, in violation of 49 C.F.R. 392.3, and that he had submitted false logs to Rich Transport to hide the violation.

The Court concludes that, although a jury could find such conduct negligent, a reasonable jury could not find Mr. Campos's and Mr. Smith's conduct outrageous under Arkansas law.  *See, e.g.*, *Fuqua v. Flowers*, 341 Ark. 901, 20 S.W.3d 388 (2000) (holding that highway department was "arguably negligent" in failing to replace a stop sign, because it "should have known that an accident was likely if the stop sign was not replaced," but that its

5

conduct did not rise to the level of outrage); *Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996) (holding that defendant did not engage in extreme and outrageous conduct when he drove his brother, whom he knew had a propensity to drive while intoxicated, to pick up his truck); *Thornton v. Squyres*, 317 Ark. 374, 877 S.W.2d 921 (1994) (holding that attorney who failed to file an answer in a divorce action, resulting in default order awarding custody of plaintiff's daughter to father, was not liable for outrage).   Therefore, Mr. Campos and Mr. Smith are entitled to summary judgment on the claim of outrage.

### B.      Negligent Infliction of Emotional Distress

The Court is not persuaded that the Arkansas Supreme Court would recognize on these facts a cause of action for negligent infliction of emotional distress under any of the prevailing theories advanced by plaintiffs.   When asked to recognize the tort in a different legal context, the Arkansas Supreme Court declined to do so and clearly stated it would not fashion a new tort out of whole cloth where, as here, there are "other sufficient avenues, short of creating a new cause of action, that serve to remedy the situation for a plaintiff." *Dowty v. Riggs*, 2010 Ark. 465, at 6, 2010 WL 4909674, at *6.   The Arkansas Supreme Court "has long held that '[t]here can be no recovery for fright or mental pain and anguish caused by negligence, where there is no physical injury.'" *Id.* (alteration in original) (quoting *Erwin v. Milligan*, 188 Ark. 658, 663, 67 S.W. 592, 594 (1934)).   It is undisputed that Aubrie McLane was physically injured in the accident; she broke her arm.   Therefore, she can recover mental distress damages on a theory of ordinary negligence to the extent they flow directly from her injury. *Chicago, R. I. & P. Ry. Co. v. Caple*, 207 Ark. 52, 179 S.W.2d 151 (1944); *compare Beaty v. Buckeye Fabric Finishing Co.*, 179 F. Supp. 688 (E.D. Ark. 1959) *and Chicago, R. I. & P. Ry. Co. v. Mizell*, 118 Ark. 153, 175 S.W. 396 (1915), *with Arkansas Motor Coaches, Inc. v. Whitlock*, 199 Ark. 820, 136 S.W.2d 184

(1940).  Alyssa Parsons's injuries, bumps and bruises, were less severe, but the physical impact need not be medically significant to support an award of mental distress damages.  *See, e.g.*, *Whitlock*, 199 Ark. 820, 136 S.W.2d 184 (finding sufficient impact where bus driver grabbed passenger's arm); *Butler County R. Co. v. Exum*, 124 Ark. 229, 187 S.W. 329 (1916) (holding that exposure to tobacco smoke was sufficient impact).

Aubrie McLane and Alyssa Parsons can recover emotional distress damages flowing directly from their injuries, if they prove ordinary negligence.  Aubrie McLane and Alyssa Parsons also seek to recover mental anguish damages under Arkansas's wrongful death statute, which does not require a physical injury.  *See* Ark. Code Ann. § 16-62-102(f).  These other avenues serve to remedy the situation for plaintiffs, if they prevail at trial on their claims.  Defendants are entitled to summary judgment on plaintiffs' claim of negligent infliction of emotional distress.

### VI.  Claims Against Rich Transport

Rich Transport, relying on the Arkansas Supreme Court's decision in *Elrod v. G & R Construction Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982), contends that it is entitled to summary judgment on plaintiffs' remaining claims of independent negligence because it has admitted *respondeat superior* liability.  The defendant in *Elrod*, like Rich Transport here, admitted that it was liable for the negligence of its employee under a *respondeat superior* theory.  The court dismissed plaintiff's separate claim for negligent entrustment, noting that it was "inclined to follow the majority view which allows plaintiff to proceed on only one theory of recovery in cases where liability has been admitted as to one theory of recovery."  *Id.* at 154, 628 S.W.2d at 19.

Though there have been no state court cases interpreting *Elrod*, there have been several federal cases interpreting the decision.  The court in *Wheeler v. Carlton*, 2007 WL 30261 (E.D. Ark. 2007), held that the plaintiff could not proceed against the employer trucking company for negligent hiring and retention where the trucking company had admitted *respondeat superior* liability.  The court recognized an exception, however, where the plaintiff "has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee."  *Id.* at *12; *accord Perry v. Stevens Transport, Inc.*, 2012 WL 2805026 (E.D. Ark. July 9, 2012) (determining that, because the plaintiff could not recover punitive damages on its independent claims of negligent hiring, training, supervision, monitoring, and retention, those claims were barred under *Elrod* and *Wheeler*).

When confronted with an independent claim of negligence against the employer, the court in *Regions Bank v. White*, 2009 WL 3148732 (E.D. Ark. 2009), determined that *Elrod* is inapplicable to claims of negligence relating to the employer's policies and procedures.  The court explained:

> Regions alleges that Daily Express was negligent in failing to:  have an adequate policy regarding the placement of triangles; adequately train its drivers regarding the placement of triangles; and have an escort vehicle available during the trip.  Regions also alleges that Daily Express negligently drafted and applied its policy regarding accident procedures, and that is was negligent in maintaining White's truck. . . .   Regions will be allowed to proceed on its independent claims of negligence insofar as [they] do not assert negligent hiring, retention, or entrustment.

*Id.* at *5.  It should be noted that Regions did not seek punitive damages in the case, so the exception recognized in *Wheeler* did not apply.

The Second Amended Complaint contains several allegations of negligence relating to Rich Transport's failure to maintain adequate policies and procedures.  For example, the

plaintiffs claim that Rich Transport "failed to train, educate, direct, prepare, set policy, or give guidance to its . . . drivers" regarding texting and driving.  They also allege that Rich Transport should have conducted periodic audits of its drivers' status logs to prevent hours-of-service violations.  The rationale articulated and applied in *Regions* applies to these claims, and the plaintiffs may pursue them.

There are other allegations of independent negligence against Rich Transport that pertain to negligent hiring and retention.  For example, plaintiffs allege that Rich Transport knew or should have known prior to hiring Mr. Smith that he had consistently failed to maintain accurate log books and that his previous employer had fired him for the violations.  These claims must support a claim for punitive damages to survive summary judgment under *Elrod* and *Wheeler*.

## VII.    Punitive Damages

Plaintiffs claim that Mr. Campos and Mr. Smith are individually liable, and that AAA Cooper and Rich Transport are vicariously liable, for punitive damages.  Plaintiffs also seek to recover punitive damages from Rich Transport for various independent acts of negligence. Arkansas Code Annotated § 16-55-206 governs awards of punitive damages.  It provides:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or
>
> The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Punitive damages must be proven by clear and convincing evidence.  Ark. Code Ann. § 16-55-207.

Historically, the Arkansas Supreme Court has found evidence sufficient to support an award of punitive damages in only two types of vehicle accident cases:  (1) when the defendant driver was drinking, or drunk, or using drugs, and (2) when the defendant was racing.  *National Bank of Commerce v. McNeill Trucking Co.*, 309 Ark. 80, 88, 828 S.W.2d 584, 588 (1992) (Dudley, J., concurring); *see, e.g.*, *National By-Products, Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 731 S.W.2d 194 (1987) (holding that an overweight tractor trailer exceeding the speed limit by 15 miles per hour while following too closely, by itself, did not support an award of punitive damages against the driver).  In 2003, in *D'Arbonne Construction Co. v. Foster*, 354 Ark. 304, 123 S.W.3d 894 (2003), the Arkansas Supreme Court affirmed an award of punitive damages against the driver of a tractor trailer who was speeding and following too closely at the time of the accident.  The court found that the award of punitive damages against the driver's employer was also supported by substantial evidence because the driver had informed the employer of the truck's poor condition.  There was also evidence that the employer had altered the brakes on the truck to avoid having to perform maintenance.  The *D'Arbonne* court emphasized that "whether a vehicle is being operated in such a manner as to amount to wanton or willful conduct in disregard of the rights of others must be determined by the facts and circumstances in each individual case."  *Id.* at 309, 123 S.W.3d at 898.

### A.      Mr. Campos and Mr. Smith

The plaintiffs have presented evidence that Mr. Campos was talking on his cell phone minutes before the collision.  Snow had begun to stick to the ground, and visibility was low.  Mr. Campos passed another vehicle that was traveling approximately 50 miles per hour just before

the accident occurred.  Mr. Campos testified that he did not see Mr. Smith's truck or the McLane's Jeep until he was just a few car lengths behind them.  Kelley Adamson testified that Mr. Campos's truck struck the McLane's Jeep hard enough to disable it completely and with enough force to bend the U-Haul and gouge the pavement.

Mr. Smith admitted to sending approximately 24 text messages over a two-hour period prior to the accident.  There is evidence that Mr. Smith had driven more than 70 hours in the eight-day period leading up to the accident, in violation of 49 C.F.R. 392.3.  Mr. Smith testified that he knew texting and driving was a violation of Arkansas law, and he demonstrated a working knowledge of the 70 hour rule by successfully completing quizzes administered by Rich Transport.  There is evidence that Mr. Smith intentionally falsified logs in order to be paid for more miles, a practice that Diane Caine characterized as a "serious offense".

While no action of Mr. Campos or Mr. Smith by itself defeats summary judgment, the Court is not convinced that no reasonable jury could find that Mr. Campos and Mr. Smith knew, or ought to have known, in light of the surrounding circumstances, that each of their respective actions would naturally and probably result in injury and that they continued such conduct in reckless disregard of the consequences from which malice may be inferred.  *See, e.g.*, *Gaddis v. Hegler*, 2011 WL 2111801 (S.D. Miss. 2011) (denying summary judgment on the issue of punitive damages where there was evidence that the driver was talking on her cell phone and speeding); *Laney v. Schneider Nat'l Carriers, Inc.*, 2011 WL 1667434 (N.D. Okla. 2011) (denying summary judgment on the issue of punitive damages where the roads were slick and there was evidence that the driver was speeding, that he was not in compliance with hours of service regulations, that he had falsified log books, and that he was fatigued); *Hoskings v. King*, 676 F. Supp. 2d 441 (D.S.C. 2009) (denying summary judgment on the issue of punitive

damages where the driver was talking on her cell phone immediately prior to the accident and adjusting her radio when the collision occurred).  The defendants may move for judgment as a matter of law on the issue of punitive damages after the plaintiffs present their evidence at trial.

### B.    Rich Transport

The plaintiffs contend that Rich Transport's negligent hiring and negligent retention of Mr. Smith, its failure to have a cell phone and texting policy, and its failure to monitor compliance with hours of service laws makes it independently liable for punitive damages.  Rich Transport documented 237 fatigued driving violations between December 2010 and February 2011.  The plaintiffs have presented evidence that Mr. Smith's logs reflected hours of service violations, and Diane Caine testified that an audit of the logs would have revealed additional hours of service violations.  According to Ms. Caine, Rich Transport was paying Mr. Smith for hours that he was not recording.  It is alleged that Mr. Smith was fired by his previous employer for falsifying logs.

Drawing all reasonable inferences in the plaintiffs' favor, the Court cannot say that no reasonable jury could find that Rich Transport knew, or ought to have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in injury or damage and that it continued the conduct with malice or in reckless disregard of the consequences from which malice may be inferred.  Accordingly, the Court denies summary judgment.  Because plaintiffs may proceed on their claims for punitive damages, plaintiffs may proceed on their claims of independent negligence against Rich Transport that pertain to negligent hiring and retention.

**VIII.   Conclusion**

For the foregoing reasons, the defendants' motions for partial summary judgment are granted in part and denied in part.   Plaintiffs' claims for outrage and negligent infliction of emotional distress and the Salem defendants are dismissed with prejudice.   The motions regarding claims against Mr. Campos, against Rich Transport, and for punitive damages are denied.

SO ORDERED this 9th day of August, 2012

_____
Kristine G. Baker
United States District Judge