IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

JAMES W. MCLANE AND MONICA MCLANE
AS CO-SPECIAL ADMINISTRATORS OF THE
ESTATE OF BARBARA JEAN MCLANE, DECEASED
AND ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF BARBARA JEAN MCLANE;
THOMAS D. WALDRON, AS SUCCESSOR
SPECIAL ADMINISTRATOR OF THE ESTATE OF
AIDEN JAMES WINSLOW MCLANE, DECEASED
AND ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF AIDEN JAMES WINSLOW MCLANE;
AND CYNTHIA PARSONS-GASS, AS GUARDIAN AD LITEM
FOR AUBRIE LYNN MCLANE AND
ALYSSA LEANN PARSONS, MINORS                           PLAINTIFFS

v.                       No. 2:11-cv-00101 KGB

RICH TRANSPORT, INC. d/b/a RICH LOGISTICS;
AAA COOPER TRANSPORTATION, INC.; JERRY SMITH;
AND FLORENTINO CAMPOS                                  DEFENDANTS

ORDER

The defendants have moved in limine to exclude certain testimony and opinions of plaintiffs' expert, Larry Cole (Dkt. Nos. 153, 163).

1.  The Court is inclined to exclude Mr. Cole's opinions relating to "hazardous conditions." "[E]xclusion of expert testimony is appropriate if the terms used have a separate, distinct, and special legal meaning." *Hogan v. American Telephone & Telegraph Co.*, 812 F.2d 409, 411 (8th Cir. 1987). "Hazardous conditions" is defined in 49 C.F.R. 392.14; therefore, Mr. Cole's testimony, in the Court's view, would not assist the jury. *Hogan*, 812 F.2d at 411; *see also Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838 (8th Cir. 2003) (noting that the evidence amounted to "a battle of experts opining as to whether Southern Pine had violated FAA regulations. . . . [H]owever, expert testimony on legal matters is not

admissible."). The Court does not see how testimony regarding the lay meaning of "hazardous conditions" would be helpful to the jury either. It is common knowledge that snow, ice, sleet, and other inclement weather can make travel hazardous, and there will be extensive testimony, lay and expert, regarding the weather conditions on the day of the accident. That being said, the Court will hold a hearing to determine the admissibility of these opinions if the plaintiffs still desire one, as they indicated in their response to the motion.

2. Defendants seek to exclude Mr. Cole's opinion that Mr. Campos and Mr. Smith "should have known that their stopping distance would be affected by the weight, length, and speed as well as the road conditions." Mr. Cole may testify regarding industry standards, but he cannot opine that the conditions on the day of the accident were hazardous or that Mr. Campos or Mr. Smith violated 49 C.F.R. 392.14.

3. Defendants seek to exclude Mr. Cole's opinion that Mr. Campos "should have known he could have reduced the likelihood of being involved in an emergency situation if he had not attempted to pass other vehicles in hazardous conditions." Mr. Cole may testify regarding industry standards, but he cannot opine that the conditions on the day of the accident were hazardous or that Mr. Campos violated 49 C.F.R. 392.14.

4. Defendants seek to exclude Mr. Cole's anticipated testimony that Mr. Campos and Mr. Smith "failed to reduce their speed by at least one half." Mr. Cole may testify regarding industry standards, but he cannot opine that the conditions on the day of the accident were hazardous or that Mr. Campos or Mr. Smith violated 49 C.F.R. 392.14.

5. Mr. Cole may not testify that the accident was preventable. "Preventable accident" is defined in the Federal Motor Carrier Safety Regulations ("FMCSR"), *see* 49 C.F.R.

385.3 ("A preventable accident is one that could have been averted but for an act or failure to act . . . ."), and therefore any testimony on that issue will not assist the jury.

6. Mr. Cole may not testify that Mr. Campos or Mr. Smith was distracted by the use of his cell phone or that Mr. Campos or Mr. Smith was focused on or interacting with his cell phone at or near the time of the collision. Such testimony is too speculative on these facts to be admissible. Similarly, Mr. Cole cannot opine that Mr. Smith was preparing to text or anticipating a text when the accident occurred, which the Court understands is based on the anticipated testimony of Sam Lister and Paul McGuire that Rich Transport never told its drivers not to text while driving, that Rich Transport had sent text messages to its drivers, and that Rich Transport did not have a cell phone policy in place. The jury may consider Mr. Lister's and Mr. McGuire's testimony and draw whatever inferences it chooses.

7. Defendants' motion to exclude Mr. Cole's anticipated testimony that Mr. Campos and Mr. Smith failed to control the steering and stopping of their vehicles is denied. The defendants' argument regarding the factual basis of Mr. Cole's opinions in this regard goes to the weight of the evidence rather than its admissibility. *See United States v. Two Elk*, 536 F.3d 890, 903 (8th Cir. 2008).

8. Mr. Cole may not testify that AAA Cooper or Rich Transport should have advised their drivers of bad weather on the day of the accident. Mr. Cole conceded that the FMCSR imposes no such duty on a motor carrier. *See Gruenbaum v. Werner Enterprises, Inc.*, 2011 WL 563912 (S.D. Ohio 2011) ("The Safety Regulations do not impose a specific duty upon a commercial trucking company to monitor the weather . . . .").

9. Mr. Cole's opinions regarding seeing ahead and following too closely are excluded. It is evident from Mr. Cole's deposition that these opinions are based solely on the

fact that an accident occurred. For example, when asked to state the basis for his opinion that Mr. Campos was not looking 12-15 seconds ahead, Mr. Cole responded that Mr. Campos was unable to stop. When asked the same question regarding Mr. Smith, Mr. Cole stated that Mr. Smith "collided with a vehicle." Mr. Cole engaged in similar speculation when questioned about following distance. Mr. Cole testified that Mr. Campos must have been following too closely because "he failed to stop in the distance that he saw things taking place." According to Mr. Cole, Mr. Smith failed to leave at least eight to ten tractor-trailer lengths between his truck and the McLane vehicle because the two "made contact." Mr. Cole did not account for the terrain at the accident site or the relative positions of the vehicles or otherwise ground his opinions in the facts of this case. Moreover, Mr. Cole conceded that neither he nor Kelly Adamson, plaintiffs' accident reconstructionist, has an opinion regarding the distance between the vehicles. "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006).

10. Mr. Cole may testify about Rich Transport's Compliance Safety Accountability Score and its on-road performance overview percentile at the time of the collision, but he cannot testify that Sam Lister lied about the SafeStat website or offer a credibility assessment of any witness.

11. Mr. Cole's opinion that Rich Transport should have contacted Mr. Smith's former employer, Tyson Foods, regarding the circumstances surrounding Mr. Smith's termination does not appear to be founded on any governing regulation. Neither 49 C.F.R. 391.23, which Mr. Cole cites, nor 49 C.F.R. 391.21, which sets forth "investigations and inquiries" a motor carrier "shall make" with respect to each driver it employs, supports Mr. Cole's opinion that Rich Transport should have contacted Tyson to determine which company policy Mr. Smith violated.

49 C.F.R. 391.21 requires an investigation of the driver's safety performance history with DOT regulated employers during the preceding three years. "The investigation may consist of personal interviews, telephone interviews, letters, or any other method for investigating that the carrier deems appropriate." 49 C.F.R. 391.23(c)(2). In addition, the prospective motor carrier must investigate the driver's previous accidents and substance abuse. 49 C.F.R. 391.23(d), (e). While Mr. Cole cannot opine that Rich Transport violated these regulations, he may testify about his experience hiring drivers.

12. Defendants' motion regarding Mr. Smith's prescription use of Darvocet is taken under advisement. The parties are directed to refrain from referring to such anticipated evidence in opening statement and to approach the bench before introducing or eliciting such evidence.

13. Defendants seek to exclude Mr. Cole's opinions regarding the credibility of certain witnesses. Based on representations made by plaintiffs' counsel, the Court understands that Mr. Cole does not intend to offer any such opinions.

14. Mr. Cole may testify regarding relevant industry standards, *see Wood v. Minnesota Mining & Mfg.*, 112 F.3d 306 (8th Cir. 1997), but he cannot opine that the defendants violated the FMCSR.

15. Mr. Cole is precluded from offering any opinions that are not tied to a relevant industry standard or testifying that the FMCSR imposes a heightened duty of care. Based on representations made by plaintiffs' counsel, the Court understands that Mr. Cole does not intend to offer any such opinions.

SO ORDERED this 7th day of September, 2012.

_____
Kristine G. Baker
United States District Judge